**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert H. McKirgan, State Bar No. 011636
Direct Dial:  (602) 262-5396
Direct Fax:  (602) 734-3863
EMail: RMcKirgan@LRLaw.com
Thomas A. Gilson, State Bar No. 022460
Direct Dial:  602 262-5704
Direct Fax:  602 734-3790
EMail: TGilson@LRLaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Bobbitt individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>Milberg, LLP; Melvyn I. Weiss; Michael C. Spencer; Janine L. Pollack; Lee A. Weiss; Brian C. Ker; Uitz & Associates; Ronald A. Uitz; The Lustigman Firm; Sheldon S. Lustigman; Andrew B. Lustigman; Gabroy, Rollman & Bosse, P.C.; John Gabroy and Ronald Lehman,<br><br>                    Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Philip Bobbitt, individually and on behalf of all others similarly situated, sues the Defendants, Milberg, LLP (FKA "Milberg Weiss LLP," "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP," and "Milberg Weiss Bershad Hynes & Lerach, LLP"), Melvyn I. Weiss, Michael C. Spencer, Janine L. Pollack, Brian C. Ker, Lee A. Weiss, Uitz & Associates, Ronald A. Uitz, The Lustigman Firm, Sheldon S. Lustigman, Andrew B. Lustigman, Gabroy, Rollman & Bosse, P.C., John Gabroy and Ronald Lehman (collectively "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff is a member of a class that was certified on January 21, 2004 in a lawsuit captioned *Drnek v. Variable Annuity Life Ins. Co.,* No. CV01-242-TUC-WDB (the "Underlying Litigation"). He brings this action individually and on behalf of the

Case 4:09-cv-00629-FRZ   Document 1   Filed 11/02/09   Page 2 of 15



previously certified class against Defendants, the lawyers who represented the class in the Underlying Litigation.

2. In the Underlying Litigation, Defendants missed multiple Court-ordered deadlines for designating experts, producing expert reports and designating fact witnesses. Solely as a result of the Defendants' negligence, the Court barred their clients from calling witnesses at trial, decertified the class and then entered judgment against the class representatives. The Ninth Circuit affirmed, concluding that Defendants' failure to meet the Court-ordered deadlines was "neither substantially justified nor harmless."

3. Defendants owed a fiduciary duty to their clients, members of the certified class. In violation of that duty, Defendants failed to notify their clients that the class had been decertified due to their own negligence. But for Defendants' negligence and breach of fiduciary duty, the class in the Underlying Litigation would have recovered substantial damages. Instead, they recovered nothing.

4. The statute of limitations has now run on the claims that Defendants asserted in the Underlying Litigation. In this lawsuit, plaintiff seeks to recover damages attributable to Defendants' negligence and breach of fiduciary duty.

**PARTIES**

5. Plaintiff Philip Bobbitt is an individual residing in 1505 Windsor, Austin, Texas 78703. On December 5, 2000, Mr. Bobbitt made an investment into a Variable Annuity Life Insurance Company ("VALIC") annuity contract for inclusion in his 403(b) tax-deferred retirement plan. He is a member of the proposed class that is defined in paragraph 22 of this Complaint (the "Class").

6. Defendant Milberg, LLP ("Milberg") was the lead counsel for plaintiffs in the Underlying Litigation. It is a limited liability partnership organized under the laws of the state of New York and maintains its principal place of business at One Pennsylvania Plaza, 49th Floor, New York, New York 10119. Milberg was formerly known as "Milberg Weiss LLP," "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP," and "Milberg Weiss Bershad Hynes & Lerach, LLP."

7. Defendant Melvyn I. Weiss is an individual who can be served at CCM Miami, Community Corrections Office, 401 N. Miami Avenue, Miami, Florida 33128. While the Underlying Litigation was pending before this Court, Defendant Melvyn I. Weiss was a partner at Milberg. On information and belief Melvyn I. Weiss is a resident of New York state.

8. Defendant Michael C. Spencer is an individual who can be served at his place of business at Milberg, LLP, One Pennsylvania Plaza, 49th Floor, New York, New York 10119. Defendant Michael C. Spencer is a partner at Milberg. On information and belief, Michael C. Spencer is a resident of New York state.

9. Defendant Janine L. Pollack is an individual who can be served at her place of business at Milberg, LLP, One Pennsylvania Plaza, 49th Floor, New York, New York 10119. Defendant Janine L. Pollack is a partner at Milberg. On information and belief, Janine L. Pollack is a resident of New York state.

10. Defendant Brian C. Kerr is an individual who can be served at his place of business at Browne, Woods & George, LLP, 49 W. 37th St., New York, New York 10018-6216. While the Underlying Litigation was pending before this Court Defendant Brian C. Kerr was an attorney at Milberg. On information and belief Brian C. Kerr is a resident of New York state.

11. Defendant Lee A. Weiss is an individual who can be served at his place of business at Browne, Woods & George, LLP, 49 W. 37th St., New York, New York, 10018-6216. While the Underlying Litigation was pending before this Court, Defendant Lee A. Weiss was an attorney at Milberg. On information and belief, Lee A. Weiss is a resident of New York state.

12. Defendant Uitz & Associates represented the plaintiffs in the Underlying Litigation. It is a limited liability company doing business in Arizona with its principal place of business in Washington D.C. Uitz & Associates can be served at 1629 K. St. N.W., Ste. 300, Washington, District of Columbia, 20006-1631.



13. Defendant Ronald A. Uitz, a partner at Uitz & Associates, is an individual who can be served at his place of business at 1629 K St. N.W., Ste. 300, Washington, District of Columbia, 20006-1631. On information and belief, Ronald A. Uitz is a resident of Washington, DC.

14. Defendant The Lustigman Firm represented the plaintiffs in the Underlying Litigation. It is a New York professional corporation with its principal place of business in New York. The Lustigman Firm can be served at 149 Madison Avenue, Suite 805, New York, New York 10016.

15. Defendant Sheldon S. Lustigman, a partner at The Lustigman Firm, is an individual who can be served at his place of business at The Lustigman Firm, 149 Madison Avenue, Suite 805, New York, New York 10016. On information and belief, Sheldon S. Lustigman is a resident of New York state.

16. Defendant Andrew B. Lustigman, a partner at The Lustigman Firm, is an individual who can be served at his place of business at The Lustigman Firm, 149 Madison Avenue, Suite 805, New York, New York 10016. On information and belief, Andrew B. Lustigman is a resident of New York state.

17. Defendant Gabroy, Rollman & Bosse, P.C. ("Gabroy") was the "liaison counsel" for the plaintiffs in the Underlying Litigation. It is an Arizona professional corporation with its principal place of business in Arizona. Gabroy can be served at 3507 North Campbell Ave., Suite 111, Tucson, Arizona 85719.

18. Defendant John Gabroy, a partner at Gabroy, is an individual residing in Arizona. John Gabroy can be served at his place of business at Gabroy, Rollman & Bosse, P.C., 3507 North Campbell Ave., Suite 111, Tucson, Arizona 85719.

19. Defendant Ronald Lehman, a partner at Gabroy, is an individual residing in Arizona. Lehman can be served at his place of business at Gabroy, Rollman & Bosse, P.C., 3507 North Campbell Ave., Suite 111, Tucson, Arizona 85719.



## VENUE AND JURISDICTION

20. Venue is proper in the District of Arizona pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District. In addition, one or more Defendants either reside or maintain offices in this District and some of the malpractice complained of herein occurred in this District as Defendants missed crucial deadlines in this District.

21. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000 exclusive of interests and costs and this is a class action in which a member of the class of Plaintiffs is a citizen of a state different from a Defendant. In addition, more than two-thirds of the proposed plaintiff class, on the one hand, and Defendants, on the other, are citizens of different states.

## CLASS REPRESENTATION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and on behalf of a Class consisting of:

> all persons who purchased an individual variable deferred annuity contract or who received a certificate to a group variable deferred annuity contract issued by VALIC, or who made an additional investment through such a contract, on or after April 27, 1998 to April 18, 2003 (Class Period), that was used to fund a contributory retirement plan or arrangement qualified for favorable income tax treatment pursuant to sections 401, 403, 408, 408A or 457 of the Internal Revenue Code.
>
> Excluded from the Class are defendants in the Underlying Litigation, any officer or director of any defendant or entity in which any defendant had a controlling interest at any relevant time, any member of those persons' immediate families and the legal affiliates, heirs, controlling persons, agents successors and predecessors in interest or assigns of any such excluded person or entity. Also excluded are the class representatives in the Underlying Litigation, James Drnek and Maureen Tiernan.



Other than the exclusion of Drnek and Tiernan, this is the exact class previously certified by the Court in the Underlying Litigation.

23. The Class meets the requirements for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

   a. The Class is so numerous that joinder of all members is impracticable. The exact number of class members is currently unknown to Plaintiff, and can only be ascertained through appropriate discovery. Based on Defendants' representations in the Underlying Case, however, class members are believed to number in the hundreds of thousands. This number is so numerous that joinder of all members of the class is impracticable. Class members may be notified of the pendency of this action using a form of notice and dissemination methods similar to those customarily used in other class actions.

   b. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and all members of the Class were represented by Defendants in the underlying action and lost valuable claims as a result of Defendants' negligence and breach of fiduciary duty.

   c. Plaintiff is a representative party who will fairly and adequately protect the interests of the other members of the Class and has retained counsel competent and experienced in class action litigation.

   d. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is impracticable. Furthermore, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation make it impracticable for Class members to individually redress the wrongs done to them.

   e. Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

6

      f.   There are common questions of law and fact that predominate over any questions affecting any individual members of the Class.

24. The questions of law and fact that are common to Plaintiff and the Class include, among others:

      a.   whether the Defendants' failure to comply with Court-ordered deadlines in the Underlying Litigation constituted negligence;

      b.   whether the Defendants breached their fiduciary duty to plaintiffs and the Class by failing to disclose their negligence to plaintiffs and the Class and the effects thereof;

      c.   whether the conduct of Defendants injured plaintiffs and the other members of the class; and

      d.   the appropriate measure of damages sustained by plaintiffs and the other members of the Class.

25. The Class also meets the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. The common issues outlined herein predominate over any individual issues in this case. A class action is superior to all other available means for the fair and efficient adjudication of this controversy because: (1) it is economically impracticable for class members to prosecute individual actions against Defendants; (2) Plaintiff is aware of no other related litigation concerning the claims against Defendants; (3) it is desirable to concentrate these claims against Defendants in a single forum so as to avoid varying and disparate results; and (4) there is no difficulty likely to be encountered in the management of this case as a class action. In addition, individual actions by the class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct. Individual actions would also cause a risk of adjudications that are dispositive of the interests of other members that are not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

7



## FACTS

### A. The Underlying Complaint against VALIC

26. Defendants filed an Amended Class Action Complaint and Jury Demand in the Underlying Lawsuit on September 21, 2001 (the "Underlying Complaint"). The Underlying Complaint is attached as Exhibit A and is incorporated as if set forth fully herein. The Underlying Complaint was brought on behalf of a class consisting of all persons who purchased an individual deferred annuity contract from VALIC or who received a certificate to a VALIC group deferred annuity contract. The contracts were issued during a specified time period and were used to fund a contributory (not defined benefit) retirement plan or arrangement qualified for favorable income tax treatment.

27. The Underlying Complaint alleged that VALIC violated federal securities laws by marketing and selling deferred annuity products to investors for inclusion in plans that already qualified for favorable income tax treatment, such as 401(k), 403(b) and IRA accounts. This resulted in investors paying additional fees without receiving any additional tax benefit. The National Association of Securities Dealers ("NASD"), now known as the Financial Industry Regulatory Authority, has told members that they should affirmatively disclose this to purchasers and not suggest annuities unless the purchasers have either a specific need for the insurance component of the investment or have fully funded their qualified plan. Both the NASD and SEC have disseminated this information to broker-dealers.

28. The Underlying Complaint alleges that VALIC trained its agents to recommend a deferred annuity to every prospective customer who is eligible to invest through a plan that qualifies for favorable tax treatment, without disclosing that the deferred annuity is redundant and regardless of whether the customer has an insurance need that is met by the product. *See* Underlying Complaint at ¶6.

29. The reasoning from VALIC's perspective was simple. The sale of deferred annuities generates substantially more money than the sale of straight mutual funds. If the tax issues were disclosed, VALIC would never be able to sell the annuities to



qualified plan investors. The same features that make the product so lucrative for VALIC cause severe economic harm to the investor. By retirement age, insurance fees and other detriments of deferred annuities can cause the loss of up to one-third of an investor's account value as compared to investment products such as mutual funds. *Id.* at ¶15. Even if investors later discover their mistake, they are trapped by the high surrender fees that make it difficult to escape the annuity. *Id.*

30. In May 1999, NASD Regulation, Inc. issued guidelines to assist members in fulfilling duties of fair dealing when selling variable deferred annuities. The guidelines state that if a deferred annuity is recommended as an appropriate product for funding a qualified plan, the sales agent has an affirmative duty to disclose that "the tax deferred accrual feature of the variable annuity is unnecessary." *See* NASD Notice to Members 99-35, *The NASD Reminds Members of Their Responsibilities Regarding the Sales of Variable Annuities* (May 1999) ("NASD NTM 99-35"); Underlying Complaint at ¶7.

31. Rather than adhere to the standards laid out in NASD 99-35, VALIC allegedly repudiated any intention of complying. For instance, the Underlying Complaint notes that in August 2000, VALIC senior compliance personnel told a convention of hundreds of VALIC agents that the agents did not need to worry about scrutiny relating to the company's non-compliance with NASD NTM 99-35 or relating to private lawsuits by deceived investors, because "VALIC is a big company that can withstand challenges to its sales practices." Underlying Complaint at ¶8. In May of 2001, VALIC's National Sales Training Coordinator and its Director of New Representative Training told attendees at a training session that "you can basically ignore 99-35." *Id.* at ¶9. The Underlying Complaint estimated that VALIC's deceptive and abusive practices cost the Class "hundreds of millions of dollars." *Id.* at ¶17.

**B.     Defendants' Malpractice Costs the Class Hundreds of Millions of Dollars**

32. The Defendants filed a number of class action complaints against other insurance companies relating to deceptive practices in the sale of variable annuities.

9



Several of these lawsuits have resulted in lucrative settlements. For instance, substantially similar claims brought by Milberg against American Express Financial Corporation and Pacific Life Insurance Company resulted in settlements of approximately $215 million and $60 million respectively. Like those cases, the Underlying Litigation would have resulted in a substantial recovery but for Defendants' negligence.[1] VALIC was (and is) owned by AIG, a multibillion dollar insurance conglomerate, and had the financial ability to settle the Underlying Litigation or to satisfy an adverse judgment.

### C. The Defendants' Negligence

33. On January 22, 2003, the Court entered a Rule 16 Scheduling Order in the Underlying Litigation. Among other things, the Scheduling Order stated that "all discovery on the merits shall be completed by December 30, 2003." It also provided that plaintiffs in the Underlying Litigation must identify expert witnesses (and provide their reports) by January 22, 2004, and that the names of "all witnesses" must be disclosed on or before April 19, 2004. The Scheduling Order provided that the schedule "may only be modified with leave of Court and upon a showing of good cause."

34. On December 9, 2003, on behalf of the plaintiffs in the Underlying Litigation, the Defendants entered into a stipulation (the "Stipulation") with VALIC's counsel extending the discovery cut-off to February 13, 2004. The Stipulation, which was drafted by Milberg, is attached as Exhibit B. The Stipulation did not affect, address or otherwise attempt to change or modify any of the other scheduling order deadlines. In fact, it states, "The time periods for the remaining provisions of the Court's January 23, 2003 Scheduling Order shall remain the same." In approving the Stipulation, the Court

---

[1] Before Defendants' negligence resulted in decertification of the class, the plaintiffs in the Underlying Litigation had achieved a strong negotiating position. Initially, their claims survived two motions to dismiss. After the Court granted Plaintiffs' Motion for Class Certification, the Court denied VALIC's first Motion for Summary Judgment in which VALIC argued that it fulfilled any duty to disclose the source of the tax deferral in its prospectus, that there was no duty to disclose the tax information because tax law is within the public domain, and that the issue had been debated in the public domain.


1  signed an order saying simply that, "[T]he parties stipulation of December 15, 2003,
2  extending the discovery deadline to February 13, 2004, is GRANTED."

3       35.    On January 1, 2004, some three weeks after the Stipulation was submitted
4  to the Court, the Court granted the plaintiffs' motion for class certification.

5       36.    Now representing a certified class (the "Underlying Class"), Defendants
6  then proceeded to disregard the Scheduling Order deadlines for designating fact
7  witnesses, expert witnesses and for providing expert reports.  Defendants apparently
8  believed that the extension of the discovery cut-off extended all other deadlines as well.
9  Rather than seeking clarification from the Court or approaching VALIC to request an
10 additional stipulation, however, Defendants simply failed to comply with the Scheduling
11 Order's January 22, 2004 deadline to designate experts and serve their reports.

12      37.    When VALIC complied with the Scheduling Order's deadline to disclose
13 their experts (February 20, 2004), Defendants raised the deadline issue at a telephonic
14 hearing on February 26, 2004.  In that hearing, the Court admonished Defendants that,
15 "Those deadlines that are set are not targets.  They're deadlines."  Even so, Defendants
16 did not move for an extension and did not move to amend the Scheduling Order.  Instead,
17 they waited another ten days before finally designating Steve Largent as an expert.  In
18 fact, Defendants did not submit Largent's report until June 3—four months after their
19 deadline and three months after the teleconference with the Court.  Even if the original
20 deadline had been pushed back as Defendants supposedly believed, Largent's expert
21 report would still have been two and a half months late.

22      38.    The Scheduling Order provided that all witnesses must be disclosed by
23 April 19, 2004.  VALIC complied with this deadline.  Counsel for the certified class did
24 not. Instead, the Defendants herein failed to submit their witness list until June 3, 2004,
25 *more than a month past the deadline*.  Defendants' conduct is particularly egregious
26 given this Court's prior strong admonition concerning compliance with the Court's
27 scheduling order deadlines.

28

11



39. On August 17, 2004, the Court granted VALIC's Motion to Strike the expert testimony of Steve Largent and VALIC's Motion to Strike Plaintiffs' witness list. Based on that ruling, the Court further found that the Underlying Class could not prove a class-wide measure of damages. Accordingly, the Court granted VALIC's Motion for Summary Judgment (regarding damages and causation). Because there was no way to prove a class-wide measure of damages, the Court also vacated its previous order granting class certification. The Court denied Plaintiffs' Motions for Reconsideration on November 12, 2004 and then denied a renewed Motion for Reconsideration on June 28, 2005.

40. In an order filed on August 8, 2005 regarding the parties' proposed judgments, the Court confirmed -- at Defendants' request -- that its decision to vacate the class certification and grant summary judgment was based solely on the Defendants' untimely disclosure of the witness list and expert testimony.

41. Defendants' failure to comply with the Court's Scheduling Order has cost the individual members of the Class the valuable negotiating leverage provided by a certified class. Just as importantly, the Court's order put the Defendants on notice that their clients, the absent members of the Underlying Class, were in jeopardy of losing *all* of their rights against VALIC in connection with the underlying claims due to statute of limitations issues.

42. The statute of limitations was tolled for the claims of each individual class member while the Underlying Litigation was pending as a class action. When the Court vacated its previous Order certifying the Underlying Class, limitations began to run again on all of the claims of absent members of the Underlying Class. Defendants made no effort to notify the Class members of their negligent acts and omissions and the effects thereof. Defendants instead chose to act as if the absent Class members were not their clients at all and to conceal their negligence from them.[2] The claims asserted by the

---

[2] As a former Milberg partner (while still working at Milberg) told Forbes magazine about being a class action attorney, "I have the greatest practice in the world. I have no

12

Class in the Underlying Litigation are all time-barred.

43. On appeal, the Ninth Circuit affirmed the judgment of this Court noting that, "[c]onfusion over deadlines is not substantial justification for a discovery violation." The Ninth Circuit further ruled that Defendants were "on notice that the district court may not have shared [their] interpretation of the extension order…and [they] could have complied with the original due dates or asked the district court for another extension."

## Count I

### Negligence

### (As to All Defendants)

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

45. Defendants had an attorney-client relationship with each member of the Underlying Class.  At least by the time the Underlying Class was certified, if not sooner, Defendants had an attorney-client relationship with all members of the Underlying Class, or otherwise owed duties to all members of the Underlying Class, with respect to their claims against VALIC.

46. Defendants violated the duty they owed to the Underlying Class -- and to the virtually identical Class proposed for certification in this action -- by failing to exercise the ordinary care and diligence exercised by other attorneys practicing in the same or similar circumstances by, among other things, missing multiple crucial scheduling order deadlines.

47. Defendants' negligence has proximately caused Plaintiff and the Class damages in an amount to be proven at trial.

## Count II

### Breach of Fiduciary Duty

### (As to All Defendants)

48. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

---

clients." Indeed, Defendants' actions in the aftermath of their negligence in this case demonstrate an adherence to this creed.

13



49. Defendants owed a fiduciary duty to each member of the Underlying Class and the virtually identical Class. Defendant Weiss acknowledged the duties that he and his firm owed to absent class members in 2008 when he pled guilty to making illegal client kickbacks:

> As counsel representing class members or shareholders not before the courts (collectively "absent class members"), Milberg Weiss and its attorneys, including WEISS, had fiduciary duties of loyalty, honesty, and trust to absent class members.

Statement of Facts in Support of Melvyn I. Weiss Plea Agreement and Information at ¶4.

50. Defendants breached their fiduciary duty to each member of the Underlying Class and the virtually identical Class by, among other things, their conduct described above and failing to adequately disclose to the Underlying Class that (1) they had missed multiple scheduling order deadlines; (2) the Court granted VALIC's Motion to Strike and granted VALIC's Motion for Summary Judgment based on Defendants missing the deadlines; (3) the Court had vacated the class certification; (4) as a result of the Court vacating the class certification, the statute of limitations would again start running on the Class members' claims against VALIC; and (5) they should consider retaining independent legal counsel to advise them on their options which would include suing Defendants for malpractice.

51. Defendants' breach of fiduciary duty has proximately caused Plaintiff and the Class damages in an amount to be proven at trial.

52. As a result of Defendants' breach of fiduciary duty, Plaintiff and the Class are entitled to recover punitive damages from the Defendants.

## **PRAYER**

Plaintiff respectfully requests:

   A.   An order certifying the proposed class, or an alternative class that the Court may find appropriate under Rule 23 of the Federal Rules of Civil Procedure, directing that Plaintiff's claims proceed on a class-wide basis,

and appointing Plaintiff and his counsel to represent the class;

B. That a judgment be rendered against Defendants in favor of Plaintiff and the Class for damages, including punitive damages, in an amount to be proven at trial;

C. An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

D. For all such other and further relief, both at law and equity, to which Plaintiff and the Class may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury in this cause.

RESPECTFULLY SUBMITTED this 2d day of November, 2009.

    LEWIS AND ROCA LLP

    By /s/ Thomas A. Gilson
        Robert H. McKirgan
        Thomas A. Gilson
        40 North Central
        Phoenix, Arizona 85004

    HOMANN, TAUBE & SUMMERS, LLP
        Guy M. Hohmann (*pro hac vice* pending)
        Joseph Brophy (*pro hac vice* pending)
        Ryan T. Shelton (*pro hac vice* pending)
        100 Congress Avenue, 18th Floor
        Austin, TX 78701

    GEORGE & BROTHERS, LLP
        R. James George, Jr. (*pro hac vice* pending)
        Gary L. Lewis (*pro hac vice* pending)
        114 W. Seventh Street, Suite 1100
        Austin, Texas 78701

    ***Attorneys for Plaintiff***