**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Bobbitt, et al., | No. CV-09-00629-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| Milberg LLP, et al., | |
| Respondents. | |

Pending before the Court are Plaintiff Philip Bobbitt's Motion for Reconsideration of, or, in the Alternative, Vacating of Order Denying Motion for Class Certification and Appointment of Class Counsel (Doc. 327) and Intervenor Lance Laber's Reiterated Motion to Intervene or, in the Alternative, Motion for Leave to Amend Complaint (Doc. 329). For the reasons stated herein, the Court grants Bobbitt's motion in part (Doc. 327), vacates the order denying class certification (Doc. 229), and grants Bobbitt's Motion for Class Certification and Appointment of Counsel (Doc. 186). Furthermore, the Court grants Lance Laber's motion to intervene (Doc. 329), and grants leave to file a fifth amended complaint adding Laber as a party.[1]

---

[1] This case has a long procedural history, and the parties' positions have been argued in various briefings. Therefore, the Court concludes that oral argument is unnecessary. *See* LR Civ 7.2(f); Fed. R. Civ. P. 78(a); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Ellies v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) ("An evidentiary hearing on class certification is not required, but the court should assess all relevant evidence to determine whether each of the Rule 23 requirements have

I.      **Factual and Procedural History**

This class action is based on underlying litigation in *Drnek v. Variable Annuity Life Ins.*, No. CV-010242-TUC-WDB (D. Ariz. May 25, 2001), wherein two investors sued the Variable Annuity Life Insurance Company ("VALIC") on behalf of a class of similarly situated individuals, alleging that VALIC sold them tax sheltered annuities without warning them the investments were already in tax-sheltered accounts. These annuities made money for VALIC, but the investors paid more for the annuities and incurred unnecessary fees. District Judge William D. Browning certified the class without conducting the analysis required by Federal Rule of Civil Procedure 23. When the plaintiffs' attorneys missed the deadline for disclosing expert witnesses, the district court precluded the experts. In August 2005, the district court decertified the class and dismissed the class-action claims because the plaintiffs had no expert witnesses to testify about class-wide causation or damages. Plaintiffs' attorneys did not notify the putative plaintiffs of their failure to meet the deadlines or inform them of the decertification and dismissal order.

In 2009, Plaintiffs Philip Bobbitt and John Sampson brought the instant class action suit for negligence and breach of fiduciary duty against the *Drnek* litigation attorneys: Milberg LLP, Melvyn Weiss,[2] Michael Spencer, Janine Pollack, Lee Weiss, and Brian Kerr; Uitz & Associates and Ronald Uitz; the Lustigman Firm, Sheldon and Andrew Lustigman (collectively "Milberg" or "Defendants").[3] Early in the litigation, Plaintiffs asked the district court to certify the same class of individuals that had previously been certified in the *Drnek* litigation. Applying the Restatement (Second) of Conflict of Laws, District Judge Frank R. Zapata found that class litigation would be unmanageable because the district court would need to apply the law of every state in which a putative plaintiff was domiciled. *Bobbitt v. Milberg, LLP*, 285 F.R.D. 424 (D. Ariz. 2012). Judge Zapata thus denied certification. *Id.*

---

been met.").

[2] Melvyn Weiss died on February 2, 2018. (Doc. 338.)

[3] Defendants Gabroy, Rollman & Bossee PC, John Gabroy, and Ronald Lehman were dismissed with prejudice on June 24, 2020. (Doc. 330.)

Plaintiffs Bobbitt and Sampson then filed a motion to dismiss the suit with prejudice, stating that the denial of certification made litigation economically impractical.[4] However, they noted that putative plaintiff Lance Laber would be seeking intervention for the purpose of appealing Judge Zapata's denial of class certification. Judge Zapata granted both the motion to dismiss and Laber's subsequently filed motion to intervene. Following his joinder in this lawsuit, Laber appealed.

On appeal, the Ninth Circuit held that the district court had misapplied the Restatement, in that it is Arizona law that governs the claims of all putative plaintiffs, not the law of each state in which a putative plaintiff is domiciled. *Bobbitt v. Milberg LLP*, 801 F.3d 1066, 1072 (9th Cir. 2015). So, the Ninth Circuit vacated the district court's order denying certification and remanded, indicating that it had no opinion as to whether class certification was ultimately appropriate. *Id.* at 1072 n.5. A week after Judge Zapata reopened the case upon remand, Laber filed a second motion to intervene to serve as class representative.

Before Laber's motion could be decided, Milberg filed a petition for a writ of certiorari in the Supreme Court, arguing the Ninth Circuit did not have jurisdiction over Laber's appeal. The Supreme Court stayed the case while it considered a similar issue in *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). In *Baker*, the Supreme Court ruled that federal appellate courts lack jurisdiction to review an order denying class certification when the named plaintiffs voluntarily dismiss their claims with prejudice to obtain a final judgment. *Id.* at 1750–51. In light of *Baker*, the Supreme Court remanded this case back to the Ninth Circuit, and the Ninth Circuit dismissed its class certification decision for lack of jurisdiction.

Upon remand, Judge Zapata entered a judgment of dismissal. Thereafter, Bobbitt filed a motion to alter or amend the judgment under Fed. R. Civ. P. 60(b), arguing the court was required to follow the Ninth Circuit's now-vacated remand order addressing the

---

[4] When this case was reopened, Sampson did not choose to continue litigating, but Bobbitt did. Therefore, the Court only addresses the pending class certification as it relates to Bobbitt as the named representative of the class.

choice-of-law issue. The district court denied the motion ("Rule 60(b) Order"), concluding it did not have to change its class certification denial because the Ninth Circuit ultimately admitted it did not have jurisdiction to overturn that decision. The district court also concluded it did not need to alter the judgment and reopen the case because Bobbitt had voluntarily dismissed his claims, and the policy favoring finality of judgments weighed against the request for relief. Bobbitt and Laber appealed.

The Ninth Circuit reversed the Rule 60(b) Order and remanded, holding that the district court had not evaluated the appropriate factors for a Rule 60(b)(6) motion. As part of the remand, the Ninth Circuit ordered the district court to grant the Rule 60(b)(6) motion, vacate the two judgments denying relief and dismissing the case, permit Bobbitt to seek reconsideration of the order denying class certification, and allow Laber to file another motion to intervene. The Ninth Circuit clarified that the district court could reconsider the issue of what law of the case applied.

Upon remand, Judge Zapata reopened this case, vacated the judgments pertaining to Bobbitt's voluntary dismissal, and ordered Bobbitt to file a fourth amended complaint. Bobbitt filed (1) the amended complaint, and (2) a motion for reconsideration of the order denying motion for class certification, or, in the alternative, a motion to vacate the class certification denial and to appoint class counsel. Simultanously, Laber filed a second motion to intervene or, in the alternative, motion for leave to amend complaint. Defendants were advised that they did not have to answer the fourth amended complaint until these pending motions are resolved. The Court now addresses the motions.

**II.  Motion for Reconsideration or Motion to Vacate Class Certification Decision**

  *a.  Timeliness*

Milberg argues that the second Motion for Reconsideration of Class Certification is untimely because it was filed two months after Judge Zapata vacated the judgments of dismissal and reopened the case. Moreover, Milberg argues Bobbitt should have filed a renewed motion for class certification, rather than a motion for reconsideration.

Bobbitt's motion is not timely under Local Rule of Civil Procedure 7.2(g), because it was filed more than 14 days after the original order (filed in September 2012), the Ninth

Circuit's decision (filed on April 14, 2020), and Judge Zapata's order vacating the judgments (filed on April 22, 2020). Regardless, the Court construes the motion as a timely Rule 60(b) motion for relief from an order. This rule permits the Court to "relieve a party . . . from a final judgment, order, or proceeding" that is "based on an earlier judgment that has been reversed or vacated," or where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This sort of motion "must be made within a reasonable time" and "no more than a year after the entry" of the order at issue. Fed. R. Civ. P. 60(c)(1). "Irrespective of the grounds, in the end, [w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 962 (D. Ariz. 2010) (quoting *In re Fowler*, 394 F.3d 1208, 1214 (9th Cir. 2005)) (quotation marks omitted). The Court exercises its discretion pursuant to the foregoing authorities and finds the motion timely.

Milberg urges the Court to reassess the factors for class certification. Bobbitt argues that the Court should grant class certification for the reasons stated by the Ninth Circuit. However, the Ninth Circuit did not reach the issue whether certification is appropriate. Thus, the Court will **grant Bobbitt's Motion for Reconsideration of the Class Certification Decision in part** (Doc. 327), **vacate the September 18, 2010 Order denying class certification** (Doc. 229), and **reconsider the Motion for Class Certification and Appointment of Class Counsel** (Doc. 186).

## III.  Motion for Class Certification and Appointment of Class Counsel

### a.  *Class Certification Standard*

Federal Rule of Civil Procedure 23 provides:

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
   (1) the class is so **numerous** that joinder of all members is impracticable;
   (2) there are **questions of law or fact common** to the class;
   (3) the **claims or defenses** of the representative parties are **typical** of the claims or defenses of the class; and
   (4) the representative parties will **fairly and adequately** protect the interest of the class.

(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

. . . .

(3) the court finds that the **questions of law or fact common to class members predominate** over any questions affecting only individual members, and that a **class action is superior to other available methods** for fairly and effectively adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (emphases added). Plaintiffs seeking class certification must show they have met the requirements of the four subsections in section 23(a) "and at least one subsection in section 23(b)." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The district court has "broad discretion to certify a class," but it "must be exercised within the framework of Rule 23." *Id.* To certify a class, the court must be convinced that the plaintiff truly meets each of the requirements for Rule 23—compliance cannot be presumed. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982). The plaintiff must prove entitlement to class certification by a preponderance of the evidence. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 n.83 (C.D. Cal. 2012); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2021 WL 1257845, at *4 n.3 (9th Cir. Apr. 6, 2021).

   b. _Class Definition_

Bobbitt asks the Court to certify the following group:

[A]ll persons who purchased an individual variable deferred annuity contract or who received a certificate to a group variable deferred annuity contract issued by VALIC, or who made an additional investment through such a contract, on or after April 27, 1998 to April 18, 2003 (Class Period) that was used to fund a contributory retirement plan or arrangement qualified for favorable tax treatment pursuant to sections 401, 403, 408,

408A, or 457 of the Internal Revenue Code.

> Excluded from the Class are defendants in this case or the Underlying Litigation, any officer or director of any defendant in this case or the Underlying Litigation or entity in which any defendant in this case or the Underlying Litigation had a controlling interest at any relevant time, any member of those persons' immediate families and legal affiliates, heirs, controlling persons, agents, successors and predecessors in interest or assigns of any such excluded person or entity.

(Fourth Amend. Compl., Doc. 328 at 5.) Bobbitt asserts that this class definition is identical to the class that was certified in the *Drnek* litigation.

### c.  *"Lost Chance" v. "Case-within-a-Case"*

"Courts are not to become involved in determining how a legal malpractice case is tried unless the parties disagree, in which case the determination of the court is a discretionary judgment that is entitled to deference." *Marrero v. Feintuch*, 11 A.D.2d 891, 901 (N.S. Super. App. Div. 2011).  There are two approaches to litigating legal malpractice claims. "The 'case-within-a-case' method is the 'accepted and traditional means of resolving the issues involved in the underlying proceeding . . . whether sounding in negligence or breach of fiduciary duty." *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1135 (D. Ariz. 2007) (quoting 4 Ronald E. Mallen & Jeffery M. Smith, Legal Malpractice § 33:9 at 1046 (2007)). In the "'case-within-a-case' the misperforming lawyer takes the place of the original defendant," who is no longer subject to litigation because of the lawyer's alleged malfeasance, and the plaintiff must prove the elements of his underlying claim as if he were litigating the original action. *Id.*; *see Phillips v. Clancy*, 733 P.2d 300, 303 (Ariz. App. 1986) (stating that legal malpractice suits require the plaintiff to "prove that but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit"). In contrast, a "lost chance" or "lost settlement opportunity" case "permit[s] the case to go to the jury on the issue of causation with less definite evidence of probability than the ordinary tort case." *Lohse v. Faultner*, 860 P.2d 1306, 1314 (Ariz. App. 1992). Liability in a lost chance scenario relies on evidence that "defendant's negligence increased the risk of harm or deprived plaintiff of some significant chance of survival or

1  better recovery." *Id.*

2      Milberg argues that to determine causation and damages in a legal malpractice suit,

3  district courts usually create a case-within-a-case, where plaintiffs must show they would

4  have recovered in the underlying litigation. Bobbitt concedes this is a proper method but

5  believes the Court should instead require plaintiffs to show a loss of chance in the

6  underlying case. Bobbitt argues that the lost-chance method is suitable because the putative

7  plaintiffs' causation and damages are shared, and damages can be calculated on a class-

8  wide basis. Bobbitt points to medical malpractice claims in Arizona that permit a lost

9  chance demonstration of damages, but no Arizona legal malpractice cases that do so.

10 However, Bobbitt asserts that doctors are similar to lawyers, and so the medical malpractice

11 cases show that the lost-chance method is appropriate here. Bobbitt believes damages could

12 be established in the same manner as other lost-chance cases because in this case there was

13 evidence VALIC wanted to settle the *Drnek* litigation to minimize the negative press it was

14 receiving. Milberg disagrees, arguing that trying to show a loss of settlement opportunity

15 is too speculative and does not establish causation.

16     The Court finds that the case-within-a-case method applies. *Cecala*, 532 F. Supp.

17 2d at 1135. Bobbitt has not convinced the Court that the lost-chance method is preferable,

18 as many of the cases Bobbitt uses to support his arguments are distinguishable and non-

19 precedential. While Bobbitt does cite two Arizona cases, neither is persuasive. *Thompson*

20 *v. Sun City Community Hospital*, 688 P.2d 605, 615–16 (Ariz. 1984) was a medical

21 malpractice case. *Thompson* cautions that the lost-chance method applies in limited

22 situations and that "[i]n the ordinary case the traditional rule prevails." *Id.* at 616. The lost-

23 chance method applied there only because the specific duty imposed on doctors was created

24 to protect against the precise injury that occurred in that case. *Id.* at 615–16. Bobbitt has

25 neither shown nor argued that the alleged duty established between Milberg and the

26 putative plaintiffs in *Drnek* was in place to prevent the precise loss the putative plaintiffs

27 endured. If the Court were to find that the lost-chance method was preferable because of a

28 general presumption that a failure to meet a deadline or issue a notice to putative plaintiffs

was the type of harm for which Milberg had a duty to protect against, the exception would

- 8 -

threaten to swallow the established method of trying legal malpractice cases. For, almost any injury suffered (e.g. lost settlement, financial loss, property loss, loss of defenses) could arguably be a loss that the duty following an attorney-client relationship is meant to protect.

Likewise, in *Lohse v. Faultner*, 860 P.2d 1306, 1308 (Ariz. App. 1992), the defendants were not attorneys, but subcontractors for the United States Forest Service. The Arizona Court of Appeals reiterated that the evidence of a chance of recovery was permissible outside of malpractice cases if "harm which followed [defendants' breach of duty] was the type from which the defendant was to have protected the plaintiff." *Id.* at 1315. Like *Thompson*, *Lohse* does not stand for the contention that legal malpractice should be measured by showing a loss of chance. The Court does not see that the instant case is exceptional or that it provides a reason to veer from the typical method of measuring damages.

Bobbitt cites to other jurisdictions which have used the lost-chance method for legal malpractice claims. These cases, however, are distinguishable. In each, the plaintiff had either already been offered a reasonable settlement, or the underlying case was resolved in the plaintiff's favor. *See Doe v. Howe*, 626 S.E.2d 25, 32 (S.C. Ct. App. 2005) (settlement had been reached, but attorney had conflict of interest, causing preemptive settlement for less than case was worth); *see also Masterson v. Clark*, 243 A.D.2d 411, 412 (N.Y. App. Div. 1997) (lost-chance method applied in legal malpractice claim where fair settlement had already been offered in underlying litigation); *Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989) (distinguishing from cases in which there was "no evidence of settlement offers or authority" and explaining lost chance requires plaintiff to show the parties "would have reached agreement upon a settlement in an ascertainable amount"); *Marrero*, 11 A.3d at 900 (underlying criminal conviction overturned and plaintiff alleged if attorney had raised alibi defense plaintiff never would have been convicted); *Moores v. Greenberg*, 834 F.2d 1105, 1108 (1st Cir. 1987) (failure to relay reasonable offer of settlement); *Fishman v. Brooks*, 487 N.E.2d 1377, 1380 n.1 (Mass. 1986) (settlement obtained in underlying litigation). Furthermore, none of these cases address the plausibility of using the lost-

chance method in class actions.

Bobbitt claims there was evidence of settlement discussions and, therefore, the Court should allow evidence of loss of the settlement value of the underlying claim. Bobbitt's evidence consists of: (1) a witness who would testify that most securities cases settle; (2) Defendant Michael Spencer's indication he anticipated meeting to discuss settlement; and (3) an email from Milberg expert Terry Long to Defendant Michael Spencer that included "a damages calculation for fees and surrender charges of $738–$801 million." (Doc. 212 at 5.) In addition, Bobbitt claims VALIC considered settlement because it prepared for settlement negotiations, and a VALIC email expressed a desire for resolution of the matter.

The argument that the Court should apply the lost-chance method is not persuasive. Lost chance is not the state standard for legal malpractice and Bobbitt has not shown why it would be preferable. Moreover, settlement in Plaintiffs' favor is far from assured; each party has highlighted the weaknesses in the other's case, and the end result should this case go to trial is far from clear. There is no evidence that a reasonable or ascertainable settlement was proposed or could have been reached in *Drnek*. VALIC's preliminary assessment of its settlement position differs from true settlement negotiations. Moreover, expressing a desire to settle in general does not equal a party's amenability to settlement for an ascertainable amount. Arguably, most litigants would prefer settlement to trial. The Court will follow the established method for legal malpractice—the case-within-a-case method. The Court now analyzes whether litigating a legal malpractice case utilizing the case-within-a-case is feasible in class litigation.

> d. *Numerosity (Fed. R. Civ. P. 23(a)(1))*

Judge Zapata found the class was sufficiently numerous. Neither party objects. The Court agrees with Judge Zapata's determination.

> e. *Common Questions of Law or Fact (Fed. R. Civ. P. 23(a)(2))*

Bobbitt argues that the putative plaintiffs share several common issues of law and fact, including Milberg's negligence, Milberg's fiduciary duty to putative class members, Milberg's breach of duty, and causation. In contrast, Milberg believes that individual issues

predominate, including each putative plaintiff's degree of reliance on VALIC's prospectus and agents' omissions when purchasing annuities; Milberg's fiduciary duty to individual putative class members; whether putative plaintiffs would have received notice of the dismissal of *Drnek* if Milberg had sent a notice to the last known address; and how each would have responded.

The commonality requirement "requires only that the class movant show that a common question of law or fact exists; the movant need not show, at this stage, that the common question overwhelms the individual questions of law or fact which may be present within the class." *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014). "[E]ven a single common question will do." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015).

Under 23(a)(2), Bobbitt has met his burden of showing there are common issues shared by the proposed class. In the very least, the factual basis for all the putative plaintiffs' claims is the same. For the legal malpractice allegations, Defendants' offensive actions are applicable to all putative plaintiffs: Milberg missed the expert witness deadline, so the class was decertified, and Milberg failed to notify the putative class. In the underlying litigation there is a common legal question whether VALIC's failure to disclose tax redundancy in its prospectuses and brochures constituted a violation of 10b–5 of the Securities Exchange Act of 1934 ("SEA"). This is not subject to individual analysis. Because commonality requires only some issues are the same among all class members, Fed. R. Civ. P. 23(a)(2) weighs in favor of class litigation.

### f. Typicality (Fed. R. Civ. P. 23(a)(3))

A typical claim need not be "substantially identical" to that of the putative class members, but the claim must be "reasonably coextensive . . . . The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Quezada v. Loan Ctr. of Calif., Inc*, No. CIV 08-00177, 2009 WL 5113506, at *3 (E.D. Cal. Dec. 18, 2009) (quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). If the alleged

cause of injury is common, then the circumstances surrounding the sale of an individual security do not preclude class litigation. *See In re Countrywide Fin. Corp. Secs. Litig.*, 273 F.R.D. 586, 603 (C.D. Cal. 2009). However, a district court should not certify a class if the putative class members have such varied defenses that the cohesiveness of class litigation would be overwhelmed by individual issues. *Id.*

"[F]raud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action," but class litigation may be unsuitable "if there were material variations in the representations made or in the kinds and degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23 advisory comm. note (1966). In securities fraud, reliance constitutes the causal link between the defendant's fraud and the plaintiff's misinformed action resulting in injury. *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009). Yet, individual issues of reliance do not necessarily defeat class certification; if this were the case, "there would *never* be a securities fraud class action." *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245, 263 (S.D. Ga. 2005) (quoting *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 102–03 (S.D.N.Y. 2004)). Specifically, individual reliance does not preclude class litigation in securities cases that primarily involve omissions. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54 (1972). An omission "generally refers to the failure to disclose material information . . . ." *Desai*, 573 F.3d at 939. With omissions, class litigation may be manageable because these cases raise a rebuttable presumption of reliance. *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). With this presumption, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute*, 406 U.S. at 153–54. In contrast, if the complaint's allegations consist of *both* misstatements *and* omissions, the "individualized proof of reliance by each class member would preclude a class action." *Binder*, 184 F.3d at 1063–64 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988)).

Milberg argues there is no presumption of reliance because the *Drnek* litigation depended upon misstatements *and* omissions. Therefore, Milberg says, class litigation is

not feasible because the Court would have to individually evaluate whether each plaintiff: (1) read the prospectus; (2) knew about tax redundancy; (3) lost money on the annuity investment; (4) knew of the vacatur; (5) would have consulted counsel had they known of the vacatur and Milberg's alleged malfeasance; and (6) would have sued Milberg. In addition, Milberg argues the Court will have to analyze individualized concerns about each putative plaintiff's goals for investing and the effect the putative plaintiff's knowledge of redundancy had on his or her choice to invest. Milberg also contends that, even if a putative plaintiff consulted counsel after learning of the vacatur, he or she still must show that counsel would have recommended suing. Finally, Milberg claims the putative plaintiffs would have to prove that their addresses were current so that they would have received a notice from Milberg, and then demonstrate they would have read the notice.

Bobbitt responds that this individualized demonstration of reliance is not necessary when, as here, the case is primarily based on omissions for an alleged violation under section 10(b) and 10b–5 of the SEA. In this sort of case, he says, reliance is presumed because causation is communal—i.e., if Milberg's failure to meet deadlines and provide notice breached its duty to one, it breached its duty to all. Regardless, Bobbitt believes reliance is not the proper measure of injury. Showing injury, he asserts, requires only a showing of "the loss of a right, remedy or interest, or the imposition of liability." *Cecala*, 532 F. Supp. 2d at 1134. Here, Bobbitt asserts the putative plaintiffs lost the right to litigate the underlying class action due to Milberg's negligence and therefore injury is unified and capable of class litigation. For the reasons set forth below, the Court finds that the individual issues of reliance do not defeat class certification.

Bobbitt compares this case to *Cooper v. Pacific Life Insurance Company*, 229 F.R.D. at 245. *Cooper* is indeed persuasive. Like here, *Cooper* involved a claim under sections 10(b) and 10b–5 of the SEA for the sale of tax redundant variable annuities. *Id.* at 250. Like here, the basis for liability rested on omissions from the prospectus and a failure to prevent tax redundant sales. *Id.* at 251, 253. The court found that class certification was appropriate because "classwide liability exists, if at all, because of the insurer's common course of conduct, through misleading omissions in the prospectus, . . . not because of what

Defendants' agents said or did in individual sales meetings." *Id.* at 263. And so, because the court found that liability did not depend on representations made to each putative plaintiff, but rather on defendant's uniform omission in the prospectuses, class litigation was suitable. *Id.* at 261. In addition, the court found that whether the omission was material was a common issue amongst putative plaintiffs. The court elaborated: "Proof of materiality will be common as well, with the test for determining this element being particularly well-suited to classwide disposition: each class member must show that the asserted omissions were material to an objectively reasonable investor." *Id.* at 261 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). And, the court added, although defendants could argue the named plaintiff did not rely upon the omissions at trial, this did not mean his claim was atypical. *Id.* at 258. The presumption of reliance could be rebutted as to any named or putative plaintiff, but this did not undermine class certification. *Id.* at 263 (citing *In re Initial Pub. Offering Secs. Litig.*, 227 F.R.D. at 102–03).

Like *Cooper*, in the *Drnek* complaint, VALIC's statements are characterized as "misleading" and "false," but the offensive acts, in reality, arise from omissions from VALIC's prospectuses and brochures, not affirmative misrepresentations. (*See* Doc. 328 at ¶¶ 64–67, 79, 89–91, 96.) The allegations include that VALIC's brochures and prospectuses pointed out the tax benefits of deferred annuities (a fact that was true in certain investments but not applicable to putative plaintiffs), while failing to disclose the tax benefit was irrelevant when an annuity funded a tax-sheltered, qualified plan. Because the underlying complaint predominantly relies upon omissions, Bobbitt and putative plaintiffs are entitled to a rebuttable presumption of reliance.

Milberg next argues that Bobbitt is not typical of the putative class because he did not rely upon the prospectus and suffered no injury: he acknowledged that the fees and expenses were available for his review if he had read the prospectus; he knew that 403(b) accounts are tax deferred; he paid no fees because he was invested in a fixed account; and he had no withdrawal penalties because he held on to his annuity even after filing the original complaint. Bobbitt responds that he is neither atypical nor inadequate simply

because he invested in a fixed account option—even plaintiff Drnek had a similar investment in the underlying litigation. This, Bobbitt argues, is a merits decision unsuited for consideration during class certification analysis.

As in *Cooper*, Milberg is free to challenge Bobbitt's or any putative plaintiff's reliance, but this does not render Bobbitt's claim atypical or class litigation unmanageable. *See Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975) (stating that the rebuttable presumption of reliance does not undermine class certification); *see cf. Yokoyama v. Midland Nat'l Life Ins.*, 594 F.3d 1087 (9th Cir. 2010) (stating that the need for an individual analysis of damages does not defeat class certification).

Moreover, whether Bobbitt's claim is typical of the class is not dependent upon Milberg's defenses, but whether the nature of his claim is typical of other putative class members. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). The nature of Bobbitt's claim is the same as the class: he asserts VALIC did not disclose tax redundancy and Milberg Defendants breached its duty to the class when they missed expert deadlines and failed to notify the putative class of decertification. Bobbitt's claim, therefore, is reasonably coextensive with that of the class.

### g. Adequacy (Fed. R. Civ. P. 23(a)(4))

A class action is proper only when the named representative can protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement" ensures that putative class members' due process rights are preserved and addresses "concerns about the competency of class counsel and conflicts of interest." *Parra v. Bashas', Inc.*, 291 F.R.D. 360, 385 (D. Ariz. 2013).

Milberg claims Bobbitt is an inadequate class representative because, unlike the alleged putative class members, he had no viable claim at the outset of litigation. Upon decertification and dismissal of the state claims, the only remaining claims in *Drnek* were those related to the federal claims under the SEA. The certified class in *Drnek* included those who "purchased an *individual variable deferred annuity contract* or who received a certificate to a *group variable deferred annuity contract* . . . that was used to fund a contributory retirement plan or arrangement qualified for favorable tax treatment." (Doc.

328 at 5 (emphasis added).) Milberg claims Bobbitt never purchased an interest in a separate account funding variable annuities. Instead, he acquired a fixed account, which was subject to state law, not federal, and so had no active claims upon decertification.

First, Bobbitt stipulates that within VALIC's Portfolio Director Fixed and Variable Annuity Contract "he has 100% investment allocation within the Fixed Account Plus [Option]," (Doc. 196-2 at 8), but Bobbitt claims that within a variable annuity an investor can purchase fixed account options. These sorts of accounts are designated "combination" annuities and are still considered securities. Bobbitt observes that Milberg spearheaded this argument in *Drnek*, and Defendant Michael Spencer admitted in a deposition that Bobbitt was within the definition of the underlying class. After dismissal of the state claims, Milberg argued in its motion for class certification:

> [P]urchasers of variable annuities who select the fixed account investment option have the same liability claim as all other purchasers (regardless of the option selected) – they would not have invested in a tax deferred product for placement in their qualified retirement plan if they had been informed of the matters alleged to have been omitted. Moreover, this Court has already determined that the claims arising from the sale of interests in the fixed account are subject to federal preemption under the Securities Litigation Uniform Standards Act; and those purchasers' state law claims have been dismissed. There is no basis to exclude them from the Class. Finally, there is no merit to VALIC's argument that plaintiffs have no damages arising from investments in the fixed account. This exact issue was litigated in the California state court case involving VALIC's sister company SunAmerica, arising from similar deception in the sale of variable annuities. After extensive briefing on an in limine motion filed by SunAmerica, the court ruled that plaintiffs had a triable claim for restitution of spread income earned by SunAmerica on the fixed account.

(Doc. 183-3 at 94 (citing *McMurdie v. SunAmerica Inc.*, BC 194082, slip op. at 5 (Cal. Sup'r. Ct. L.A. Co. Aug. 16, 2002).)

Second, Bobbitt assumes that when Judge Browning granted class certification, he presumably agreed with Milberg's argument that persons with fixed options were included in the putative class. Third, Bobbitt claims that whether the fixed account option within the variable annuities raise viable federal claims is a merits-based argument that the Court

should not decide upon class certification. If the Court is concerned, Bobbitt suggests it could simply segregate those investors with fixed accounts into a subclass.

"[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (emphasis added). However, this consideration may not be transformed "into a mini-trial to determine if the class 'could actually prevail on the merits of their claims.'" *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335, 2018 WL 6300479, at *3 (S.D. Cal. Nov. 29, 2018) (quoting *Ellis*, 657 F.3d at 983 n.8); *see also United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) ("Although certification inquiries . . . might properly call for some substantive inquiry, [t]he court may not go so far . . . as to judge the validity of these claims.") (quotation marks omitted)). This limited inquiry allows "[m]erits questions [to] be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

In the Court's view, there is an overlap between the question of whether Bobbitt is an adequate class representative and the merits of his claim. If Bobbitt had no federal claim to raise in this Court because he was a fixed account holder, and fixed options were not subject to federal securities laws, then he could not represent a class of (1) similarly situated investors with no federal claim and no right to sue in federal court, or (2) investors who were unlike Bobbitt and had invested in fully variable annuities. Whether a fixed option within a variable annuity is considered variable is a question at the crux of the adequacy inquiry.

Within the variable annuity, an investor can allocate certain funds into fixed or variable options. "Variable annuities are typically characterized as hybrid products, possessing characteristics of both insurance products and investment securities. . . . As hybrid products, variable annuities are properly subjects of hybrid regulation [both by federal securities and state insurance regulation]." *Patenaude v. Equitable Life Assur. Soc'y*

*of U.S.*, 290 F.3d 1020, 1024 (9th Cir. 2002) (internal citations and quotation marks omitted), *abrogated on other grounds by Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n.1 (2006).

Bobbitt's Group Fixed and Variable Annuity Contract Certificate states: "Annuity payments and surrender values provided by this contract when based on investment experience of the separate account are variable and are not guaranteed as to fixed dollar amount." (Doc. 188-1 at 3.) Under the terms of the contract: "Fixed Subaccount accumulations will provide a Fixed Annuity and Variable Subaccount Units will provide a Variable Annuity (Annuity Units in the Separate Account)." (*Id.* at 11.) This suggests his account, while having characteristics of a fixed annuity, is considered variable.

Indeed, other courts have refused to accept Milberg's argument that when an investor selects a fixed option within a variable annuity, it is no longer a security subject to federal regulation. *See e.g.*, *Montoya v. N.Y. State United Teachers*, 754 F. Supp. 2d 466, 472 (E.D.N.Y. 2010). The Court finds these cases persuasive because they presuppose that a variable annuity "is dependent on the structure of the annuity, not on how an annuitant chooses to allocate funds within the annuity." *Id.* (quoting *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 411 (S.D.N.Y. 2003)). "Adding a fixed option does not transform a variable annuity product. . . . A product offering a mix of fixed and variable options is a variable product rather than a fixed product. In other words, a fixed option cannot remove variance from a variable product." *Miller v. Metro. Life Ins.*, 979 F.3d 118, 126 (2d Cir. 2020) (Manashe, J., concurring) (citing *Winne,* 315 F. Supp. 2d at 411).

Plaintiff has shown by a preponderance of the evidence that he had a viable claim at the time of filing the instant complaint, as he was part of the class certified in *Drnek*. Furthermore, whether fixed account investors within VALIC's Portfolio Director Fixed and Variable Annuity had a viable claim upon decertification is a shared and segregable question which can be easily handled in a class setting. *See* Fed. R. Civ. P. 23(c)(5); 3 Newberg on Class Actions § 7:29 (5th ed. 2020) (explaining permissive subclasses are an acceptable way to promote efficiency).

By covering Bobbitt's annuity under the umbrella of VALIC's variable annuities at this stage, Bobbitt can champion the claims of all variable annuity holders. Bobbitt is an adequate and typical representative of the class. As stated previously, the underlying facts are shared with the class, and there are similar issues of duty, breach, and materiality.[5]

Adequate representation by counsel "requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 495 (N.D. Cal. 2010). The Court finds that Bobbitt's counsel is adequate. Counsel has advocated competently and effectively for the rights of the putative class members. Counsel represented Bobbitt from the outset and, after certification was denied, filed Laber's motion to intervene in accordance with the law at the time. Counsel has successfully appealed to the Ninth Circuit and Supreme Court, which has led to this case being reopened. Counsel's persistence has protected the rights of putative plaintiffs thus far, providing another opportunity to successfully litigate the question of class certification.

### h.  *Predominance (Fed. R. Civ. P. 23(b)(3))*

The predominance analysis weighs the individual and common issues to decide whether class litigation is preferable. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Common issues need not be homogenous between the representative and the putative class, but must be "sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007).

Here, a common nucleus of operative facts predominates.  The common issues in the *Drnek* litigation include VALIC's duty and failure to disclose tax redundancy in its prospectus and the materiality of such failure. "[C]ourts routinely certify classes in cases . . . in which the alleged misconduct occurs in the form of a standardized writing by a

---

[5] Moreover, Laber argues in the motion to intervene that he can fill in as a representative for those who invested in variable options. As discussed in detail below, between Laber and Bobbitt, the interests of all class litigants are protected.

common defendant." *Brink v. First Credit Res.*, 185 F.R.D. 567, 572 (D. Ariz. 1999).  In this litigation, shared events in the alleged legal malpractice claim include Milberg's failure to meet the deadline for expert witnesses, and to notify putative class members that the class had been decertified.

In addition, because Plaintiffs are entitled to the presumption of reliance, individual issues of reliance do not overwhelm the ability to litigate as a class. Plaintiffs must prove only that the failure to disclose would be material to a reasonable investor, not that each investor relied upon the omission. As the Court noted previously, Defendants may challenge an individual's reliance, but this is manageable within a class action. Common issues of Milberg's actions, legal theories of recovery, presumed reliance, duty, and breach predominate over the individualized defenses to recovery.

   i.   *Superiority (Fed. R. Civ. P. 23(b)(3))*

      (A) Fed. R. Civ. P. 23(b)(3)(A)) & 23(b)(3)(B)

"Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180, 1190 (9th Cir. 2001). "For example," class litigation is superior when "a group composed of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure." *Id.* at 1191 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. and Proc. § 1779, at 557 (2d ed. 1986)). In addition, class litigation is superior when it will reduce costs and conserve judicial resources. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Milberg claims Bobbitt has no evidence that the putative plaintiffs' claims were so small as to deter individual litigation or that class litigation would serve the interest of judicial economy. Bobbitt counters that even Milberg argued in *Drnek* that potential recovery was too miniscule to warrant individual actions. The Court finds the fact that both Bobbitt and Sampson, when faced with proceeding individually, decided to dismiss this matter with prejudice weighs in favor of Bobbitt's position. Also, Milberg does not point to any investor in the class who has chosen to litigate individually; this undermines their

- 20 -

assertion that individual litigation is preferable. *Cf. Zinser*, 253 F.3d at 1191 ("[T]he existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.").

### (B) <u>Fed. R. Civ. P. 23(b)(3)(C)</u>

After reviewing the Ninth Circuit's analysis about the choice of forum, the Court agrees that the District of Arizona is an appropriate and desirable forum in which litigation should proceed. Milberg makes no persuasive argument otherwise.

### (C) <u>Fed. R. Civ. P. 23(b)(3)(D)</u>

"[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192. For the reasons stated in the Court's analysis of predominance, the Court finds any complexities raised by class litigation are outweighed by the common issues of law and fact.

### *j.* *Validity of Class Certification in* Drnek

Milberg claims that there should be no class in this case because Judge Browning's certification in *Drnek* was improper and therefore ineffective. The Court need not assess whether Judge Browning's certification order was invalid because the Court finds independently that class certification is appropriate. This does not mean the Court has determined that the certification was proper, or that certification imbued a duty on Milberg to inform putative plaintiffs of decertification in *Drnek*. The Court has previously concluded that the duty to notice putative class members "in *Drnek* is really an inquiry into the appropriate standard of care . . . . As such, it is an issue for the trier of fact." (Doc. 61 at 11 (citing *Baird v. Pace*, 752 P.2d 507, 509 (Ariz. App. 1987)). This is an issue for trial, and a finding is not necessary to determine whether class certification is appropriate in this case.

Therefore, **the Court finds class certification is appropriate, determines Bobbitt is a suitable representative, and appoints Plaintiff Bobbitt's attorneys as class counsel. Accordingly, the Motion to Certify Class and Appointment of Class Counsel is**

**GRANTED.** (Doc. 186.)

## IV.    Lance Laber's Motion to Intervene

Laber asks the Court to allow him to either intervene or to join as an additional plaintiff and permit a fifth amended complaint adding him as a party.

### a.    *Timeliness of Intervention*

For intervention to be timely, a court considers, "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Stadnicki ex rel. LendingClub Corp. v. Laplanche*, 804 F. App'x 519, 521 (9th Cir. 2020). The district court has considerable discretion when determining timeliness. *United States v. Alisal Water Corp.*, 370 F.3d at 921 (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981)). Typically, a motion to intervene is timely if filed before the opt-out deadline. *See* 3 Newberg on Class Actions § 9:31 (5th ed. 2020); *Wallach v. Eaton Corp.*, 837 F.3d 356, 372, 374 (3d Cir. 2016).

Milberg argues that Laber's intervention motion is untimely. Milberg notes Laber discussed joining the litigation within months of filing the complaint, but only sought intervention after Bobbitt and Sampson dismissed their claims so that he could appeal the denial of class certification. Milberg claims this was an impermissible tactical decision. If intervention had been filed any earlier, Milberg says, Laber would have been forced to continue litigating individually. Milberg also believes Laber has waived any timeliness arguments because he did not raise them in his motion.

In addition, Milberg argues the motion is untimely because Laber did not file the motion to intervene in the 60 days prior to filing the fourth amended complaint. If he had done so, he could have been included in the amendment. Milberg also argues that Laber has provided no good reason for not intervening prior to 2015. This case is already 11 years old, Milberg observes, and Laber has had years to become a named party. Laber and Bobbitt share counsel, and Milberg claims Laber knew he needed to intervene when the class was denied but he failed to protect his interests. Milberg Defendants believe they will be prejudiced by the untimely motion because "years of class discovery and litigation regarding Bobbitt's appropriateness as class representative will have been wasted," and

"full class discovery will be needed to assess Laber's adequacy and typicality." (Doc. 344 at 18.)

Laber acknowledges that this case has been pending for a long time but asserts that, procedurally, the case is in its "infancy." Laber contends the second motion to intervene should relate back to the 2015 motion that was never decided. He also notes that his motion to intervene is timely because it was filed before the class's opt-out period. Laber explains he relied upon Bobbitt and Sampson to protect his interests until the denial of class certification, upon which he filed for intervention to appeal. Moreover, according to Laber, Milberg would suffer minimal prejudice because he is raising similar claims to Bobbitt, and Milberg was on notice of Laber's desire to intervene for years, given his involvement in this case.

Laber has attempted to intervene in some manner since the initial class certification denial. While Laber would have known that Bobbitt had only variable annuities and may not have standing to raise his claims once the class certification motion was briefed, at that point Sampson was still litigating and he could have represented Laber's position. Furthermore, Milberg glosses over the fact that intervention for appeal was permissible under the law of this circuit at the time, even if it was strategic. Prior to dismissal of the class, Laber would not have wanted to join given the state of the law—it was advantageous to delay intervention for appeal. He should not be punished for acting in a way that any prospective litigant would find advantageous to the class. And, once the case was reopened, Laber asked to intervene within the month. It was through no fault of his own that the Court did not rule on Laber's motion to intervene upon remand.

As far as the stage of the proceedings, the Court finds Laber's motion is timely for the same reasons as Bobbitt's motion. The Court is starting from the beginning. Judge Zapata did not direct the parties how he wanted to proceed except to file the fourth amended complaint and to start anew. In addition, Defendant has not yet responded to the fourth amended complaint. Moreover, Defendants were on notice that they may be subject to class-wide liability from the beginning, and it is unpersuasive to claim that further discovery as to one putative member would be unduly prejudicial. *See Alaska v. Suburban*

*Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997) (noting class complaint puts defendant on notice of the possibility putative class members may join litigation).

### b. *Statute of Limitations*

Milberg first claims Laber's statute of limitations arguments were waived because he didn't raise them in his renewed motion. The Court disagrees. Timeliness arguments were addressed in supplementary briefing for the previous motion to intervene, Laber responds to Milberg's statement in his reply, and Milberg was afforded the opportunity to address it in his sur-reply. The purpose of waiver is to ensure both parties have a fair opportunity to present their positions. *See Stickle v. SCI W. Mkt. Support Ctr., LP*, No. 08-083-PHX, 2009 WL 3241790, at *4 (D. Ariz. 2009) (holding that the rule barring a party from raising new arguments or presenting new evidence on reply "is a rule rooted in the notion of fairness between parties"). Here, both parties have had several opportunities to argue the timeliness of Laber's intervention. Also, the second motion to intervene relates back to the first, which was never decided, but in which timeliness arguments were explored in depth. Moreover, there is a "strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The Court will consider both parties' arguments regarding the timeliness of intervention.

Milberg's substantive statute of limitations argument relies upon the assumption that Bobbitt cannot litigate because he had no standing, and as a result, the limitations period expired. Milberg claims Laber had two years from the last day available for a petition of certiorari in *Drnek* to file his own malpractice claim—i.e. April 28, 2010. However, since the Court finds that Bobbitt is a viable representative of the class, this undermines the basis for Milberg's argument.

Milberg also claims *American Pipe* tolls the limitations period for federal claims, but would not toll Laber's state law negligence and legal malpractice claims. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974). And, Milberg argues, even with *American Pipe* tolling, once certification was denied, the clock started again. Laber responds that once the class action was filed, it tolled the statute of limitations, and because the order

denying certification should never have been issued, the clock remained tolled. Because Bobbitt's complaint was timely, and the order denying class certification was void, Laber asserts that intervention is not statutorily barred. Moreover, Laber asserts, Milberg's citations regarding tolling apply only to cross-jurisdictional tolling—i.e., where a class action filed in one jurisdiction is used to toll a similar class action subsequently filed in another jurisdiction. Since Laber is simply asking for tolling of the time in the current lawsuit within the same jurisdiction, he contends that Milberg's citations do not undermine the appropriateness of tolling here.

The commencement of a class action tolls the applicable statute of limitations for all asserted class members and remains tolled until class certification is denied. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54 (1983).  When an order denying class certification is reversed and remanded, tolling applies from the time the class complaint was filed to the date of reversal. *See Deposit Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 330 n.3 (1980) ("Reversal . . . may relate back to the time of the original motion for certification for the purposes of tolling the statute of limitations on the claims of the class members."); *see also Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("If the denial of class certification were improper then the class still exists and the class members retain the opportunity to seek recourse through litigation."). Furthermore, "a court may under certain circumstances make narrow equitable exceptions to statutes of limitations." *Rader v. Greenberg Traurig, LLP*, 352 P.3d 465, 468–69 (Ariz. App. 2015); *see also American Pipe*, 414 U.S. at 539 (statutory time limitations do not indicate whether the limitations period should be tolled, nor do they "restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose").

Milberg points to the Court's statement that the limitations period for putative members "is not tolled during subsequent appeal, even if the appeal concerns the district court's denial of class certification."  (Doc. 344 at 16.) However, this statement related to the original *Drnek* decertification appeal, which was affirmed, and did not address whether the time is tolled when a denial of class certification is vacated. As discussed in the class

certification motion, this class action has been revived with Bobbitt as representative. When the certification denial order was reversed, this effectively tolled the time between denial and remand. Thus, Laber is not seeking cross-jurisdictional tolling, but instead is asking to join as a named plaintiff in litigation that will otherwise proceed. This is permissible. So, the only question that remains is whether Laber can intervene, join, or become a party upon amendment.

### c. *Permissive Intervention*

A court may grant permissive intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A permissive intervenor's motion must: (1) be timely; (2) raise "an independent ground for jurisdiction;" and (3) demonstrate "a common question of law and fact" exists "between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). A court may also weigh other discretionary factors, such as:

> [the intervenor's] standing to raise relevant legal issues, . . . whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

First, the motion is timely for the reasons stated previously. Second, Laber has an independent ground for jurisdiction: he too was a putative plaintiff invested in a VALIC variable annuity. Third, the basis for Laber's claim rests upon the same factual and legal contentions as the main action. Moreover, unlike Bobbitt, Laber was invested in variable annuities and so his intervention protects the interests of a certain subset of class that Bobbitt may not be able to sufficiently represent. His position also contributes to development of the underlying factual issues in the suit. Finally, at this juncture,

intervention will not unduly prolong litigation because as it stands, no defendant has answered the operative fourth amended complaint. The Court finds that Laber's intervention is permissible.

### d. Leave to Amend

The Court evaluates whether to permit amendment by weighing "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). Furthermore, after the deadline for amendment has passed, a party seeking amendment must first meet the Rule 16(b) standard, which requires good cause for amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *see* Fed. R. Civ. P. 16(b). Once good cause is established, the moving party must then show entitlement to amendment under Rule 15(a), which permits amendment "freely when justice so requires." *Id.* at 608; *see* Fed. R. Civ. P. 15(a). Only after the moving party has satisfied the requirements of Rules 15 and 20 (the rule addressing permissive joinder) is amendment to add additional parties permitted. *Jolicoeur v. Minor*, No. CV-17-00930-PHX, 2018 WL 1805529, at *4 (D. Ariz. Apr. 16, 2018). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The party opposing amendment bears the burden of demonstrating prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Defendants object to amendment because of the age of the case and the number of previous amendments. They argue amendment would greatly prejudice them and unduly delay proceedings. They also claim amendment is futile because Bobbitt had no standing to join and Laber's claim is therefore time barred.

This case is old, but the procedural posture is not. A fifth amended complaint does not prejudice Milberg as it has not yet responded to the fourth amended complaint. Furthermore, Milberg has been aware of the likelihood of Laber's intervention for years. In addition, intervention will not require discovery to be reopened in its entirety but may merely necessitate disclosure of Laber's financial records and his deposition. There is also

good cause for the amendment given the procedural posture of this case and as noted previously, Laber qualifies for permissive joinder. Thus, Bobbitt and Laber shall be permitted to file a fifth amended complaint, adding Laber as a named party. Laber's **Motion to Intervene** is **GRANTED IN PART** as described in this Order. (Doc. 329.)

Accordingly, IT IS ORDERED:

1) Plaintiff Phillip Bobbitt's Motion for Reconsideration of, or, in the Alternative, Vacating of Order Denying Motion for Class Certification and Appointment of Class Counsel is GRANTED IN PART. (Doc. 327.)

2) District Judge Zapata's September 18, 2012 Order denying class certification is VACATED. (Doc. 229.)

3) Plaintiff Phillip Bobbitt's Motion for Class Certification and Appointment of Class Counsel is GRANTED. (Doc. 186.)

    a. The certified class includes the putative class members defined in section III(b) of this Order.

    b. The attorneys representing Phillip Bobbitt for the Motion for Class Certification are appointed as class counsel for putative plaintiffs.

4) Intervenor Lance Laber's Reiterated Motion to Intervene or, in the Alternative, Motion for Leave to Amend Complaint is GRANTED IN PART. (Doc. 329).

5) Plaintiff may file a fifth amended complaint adding Laber as a party plaintiff on or before June 18, 2021.

Dated this 18th day of May, 2021

Honorable Raner C. Collins
Senior United States District Judge