| | |
|---|---|
| **LEWIS ROCA ROTHGERBER CHRISTIE LLP**<br>**Lawrence A. Kasten** (State Bar No. 020204)<br>lkasten@lewisroca.com<br>**Nicholas S. Bauman** (State Bar No. 032263)<br>nbauman@lewisroca.com<br>**Allison L. Whitehill** (State Bar No. 036339)<br>awhitehill@lewisroca.com<br>201 East Washington Street, Suite 1200<br>Phoenix, AZ 85004<br>Telephone: 602.262.5311 | **BROPHY & DEVANEY, PLLC**<br>**Joseph F. Brophy** (*pro hac vice*)<br>joe@bdlawpllc.com<br>**Haley Devaney** (*pro hac vice*)<br>haley@dblawpllc.com<br>**Marianne Barth** (*pro hac vice*)<br>marianne@bdlawpllc.com<br>317 Grace Lane, Suite 210<br>Austin, TX 78746<br>Telephone: 512.596.3622 |
| **PAPETTI SAMUELS WEISS MCKIRGAN LLP**<br>**Robert H. McKirgan** (State Bar No. 011636)<br>rmckirgan@pswmfirm.com<br>16430 North Scottsdale Road, Suite 290<br>Scottsdale, AZ 85254<br>Telephone: 480.800.3533 | **GEORGE, BROTHERS, KINCAID & HORTON, LLP**<br>**D. Douglas Brothers** (*pro hac vice*)<br>dbrothers@gbkh.com<br>114 West 7th Street, Suite 1100<br>Austin, TX 78701<br>Telephone: 512.495.1400 |
| **HOHMANN LAW FIRM**<br>**Guy M. Hohmann** (*pro hac vice*)<br>guyh@hohmannlaw.com<br>114 West 7th Street, Suite 1100<br>Austin, TX 78701<br>Telephone: 512.495.1438 | **EDMUNDSON SHELTON WEISS PLLC**<br>**Ryan T. Shelton** (*pro hac vice*)<br>ryan@eswpllc.com<br>317 Grace Lane, Suite 210<br>Austin, TX 78746<br>Telephone: 512.596.3622 |

*Attorneys for Plaintiffs Philip Bobbitt and Lance Laber*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Philip Bobbitt and Lance Laber, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Milberg, LLP; Melvyn I. Weiss; Michael C. Spencer; Janine L. Pollack; Lee A. Weiss; Brian C. Kerr; Uitz & Associates; Ronald A. Uitz; The Lustigman Firm; Sheldon S. Lustigman; and Andrew B. Lustigman,<br><br>Defendants. | No. CV-09-00629-TUC-RCC<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

In advance of the Fairness Hearing scheduled for September 5, 2023, Plaintiffs submit this motion seeking the Court's final approval of the *Stipulation of Class Action Settlement and Releases* (Dkt #398-1) ("Settlement Agreement")[1] executed by all parties on March 30, 2023, and in support, show the following:

### INTRODUCTION

Since the Court's entry of the Preliminary Approval Order (Dkt #405), finding on a preliminary basis that the Settlement is fair, reasonable, and adequate to all Class

---

[1] Defined terms herein have the same meaning as in the Settlement Agreement. (Dkt #398-1).

Members, the notice plan ordered by the Court has been fully implemented.[2] No Class Member has objected to the Settlement or indicated an intent to appear at the Final Fairness Hearing.[3] None of the government officials notified by the Defendants' CAFA notice has objected or indicated an intent to attend the Fairness Hearing.[4] A miniscule percentage of the Class Members have asked to exclude themselves from the Class.[5] These circumstances are a powerful indicator of the fairness and adequacy of the Settlement.

The Settlement in this case was the product of serious, arm's-length negotiations between the counsel for the Class and counsel for the Defendants over an extended period of time and conducted by experienced and highly competent counsel.[6] The parties reached a resolution in principle after an extensive mediation process conducted before a highly regarded, neutral, complex commercial mediator, David Geronemus of JAMS. The resulting Settlement has been thoroughly reviewed and considered by multiple class-action experts to ensure compliance with the Federal Rules of Civil Procedure, governing statutes, and due process requirements. It treats all Class Members equally, using a compensation formula that is objective and fair to allocate the limited-fund proceeds.

Without this Settlement, the road to recovery for the Class remains challenging and will drain available insurance resources from which to recover. Therefore, Plaintiffs and Class Counsel believe the proposed Settlement and avoiding the risks and delay of further litigation is in the best interests of the Class Members. Because this Settlement satisfies the requirements of Federal Rule of Civil Procedure 23(e) and comports with federal law and the United States Constitution, the Court should confirm its preliminary

---

[2] *See* Declaration of Jason M. Stinehart of Rust Consulting, Inc. ("Rust Decl."), the Settlement Administrator. (Exhibit 1 ¶¶ 3-14).

[3] (*Id.* ¶ 16).

[4] (*Id.* ¶ 4).

[5] (*Id.* ¶ 16).

[6] *See Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (Ninth Circuit "put(s) a good deal of stock in the product of an arms-length, noncollusive, negotiated resolution.").

finding that the settlement is fair, reasonable, and adequate; confirm that the Class Notice plan was implemented fairly and effectively and was adequate to the task of notifying the Class Members of their rights and obligations; approve the Plan of Distribution; and enter a Final Judgment so that the Settlement consideration can be provided to the Class Members.

### BACKGROUND

The Court is familiar with this class action lawsuit, having presided over it for several years.[7] This case was first filed in November 2009 and arises out of a securities fraud class action against the Variable Annuity Life Insurance Company ("VALIC"), an issuer of variable annuities, filed in 2001. *See Drnek v. Variable Annuity Life Ins.*, No. CV-010242-TUC-WDB (D. Ariz. May 25, 2001) ("*Drnek*" or the "Underlying Litigation"). Plaintiffs, individually and on behalf of a class, have asserted certain claims against Defendants related to Defendants' alleged legal representation of a class in the Underlying Litigation against VALIC.

In *Drnek*, the securities fraud claims survived multiple dispositive motions, and the District Court granted class certification. Plaintiffs assert that, after the class certification order was entered, however, Defendants missed key court-ordered deadlines for disclosing witnesses and experts, resulting in decertification of the class and an adverse judgment in the Underlying Litigation. Plaintiffs further assert that, as a result, the District Court in *Drnek* barred testimony from those witnesses, decertified the class, and entered a judgment in favor of VALIC. The Ninth Circuit affirmed, finding that this failure to meet the deadlines was "neither substantially justified nor harmless." *Drnek v. Variable Annuity Life Ins. Co.*, 261 Fed. App'x 50, 51 (9th Cir. 2007).

---

[7] The facts recited in this motion are supported by the Declarations of the Class Counsel appointed by the Court—Robert McKirgan, Guy Hohmann, Lawrence A. Kasten, D. Doug Brothers, Joseph F. Brophy, and Ryan Shelton—which are attached to *Plaintiffs' Application for Attorneys' Fees and Service Awards* ("Application") as Exhibits A-F, filed contemporaneously and incorporated here by reference. A copy of the Declaration of Lawrence A. Kasten ("Kasten Decl.") is attached as Exhibit 2 for the Court's easy reference, and this motion will cite the Kasten Decl. as an exemplar for Class Counsel, as he has been designated as the lead class counsel in the Class Notices. (*See* Kasten Decl., Ex. 2 ¶ B.9.*i*).

Plaintiffs allege that Defendants' conduct in the Underlying Litigation constituted malpractice that caused the loss of important and meritorious claims for the class Defendants represented. Defendants have continued to deny any liability for the claims asserted in this class action and have vigorously defended this litigation. (Dkt. 398-1 § 15). After extensive litigation over the course of almost 14 years involving two different appeals and negotiations involving both formal mediation and informal settlement discussions, the parties have reached a settlement to resolve this action for $32.15 million plus up to $1 million for the cost of notice. *See* Notice of Settlement (Apr. 3, 2022) (Dkt #398).

The Court granted preliminary approval of the Settlement on April 11, 2023, in which it: (i) approved the Parties' proposed form and method of providing notice to the Class Members of the proposed Settlement; (ii) appointed Rust Consulting to serve as Settlement Administrator; (iii) directed that notice be given to Class Members in the proposed form and manner; and (iv) confirmed a hearing to determine whether the Court should grant final approval of the Settlement, enter judgment, award attorneys' fees and expenses to Class Counsel, and grant a Consulting Fee to Professor Bobbitt for his unique and unparalleled contributions to the Class, and service awards to the Class Representatives. (Dkt #405, 407). Since that time, the massive notice campaign has been fully implemented, including mailed notices to 1,392,187 unique addresses for Class Members (as provided by VALIC) (*see* Ex. 1, Rust Decl. ¶ 3-14), and not a single Class Member or governmental official notified pursuant to the CAFA notices has objected or indicated an intent to attend the Fairness Hearing. (*Id.* ¶¶ 4, 16). Only a miniscule percentage (0.025%) of the Class Members timely elected to exclude themselves from the Settlement. (*Id.* ¶¶ 12, 15). The Settlement Administrator is accepting and processing Claims. (*Id.* ¶ 5). And pursuant to the Court's Preliminary Approval Order, if the Court gives final approval to the Settlement and enters a Final Judgment, the Settlement Class

Members will be required to submit a Claim Form postmarked by October 5, 2023. (Dkt. #405, 407).[8]

Plaintiffs request that the Court grant this motion to finally approve the Settlement Agreement and enter a Final Judgment so that the Distribution Plan can be implemented.

## ARGUMENT AND AUTHORITIES

**A.  This Settlement meets and exceeds applicable standards for final approval.**

A district court has discretion to approve a class action settlement under Rule 23(e) if the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e). "[T]here is a strong judicial policy that favors settlements." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). The Court has found, on a preliminary basis, that the Settlement is "fundamentally fair, adequate and reasonable" to afford settlement class members the opportunity to evaluate and comment on the proposed settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625 (9th Cir. 1982). The Fairness Hearing, which is set for September 5, 2023, is the final step in the approval process where the Court will determine whether the Settlement should be finally approved as fair, adequate, and reasonable to the Class. *E.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).

Rule 23(e) requires consideration of each of the following factors in approving a class-action settlement:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

---

[8] The Court modified its Preliminary Approval Order by granting *Plaintiffs' Motion for Supplemental Order with Respect to Preliminary Approval of Class Settlement* on April 17, 2023 (Dkt #407). The April 17 Order approved the proposed Summary Notice, Claim Form, and Class Notice that were attached to Plaintiffs' motion as Exhibits A-C. *See* (Dkt #407 at 1). The notices and Claim Form all inform the Class Members that Claim Forms must be postmarked by October 5, 2023.

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Each of these factors counsels strongly in favor of final approval.

  **1. The Class Representatives and Class Counsel have ably and zealously represented the class.**

The Court has previously and thoroughly considered the class certification issues and granted certification of the Class for litigation purposes in a lengthy and well-reasoned opinion. *Bobbitt v. Milberg LLP*, 338 F.R.D. 607, 626 (D. Ariz. 2021). Having presided over the class for several years, the Court is aware of the complexity and difficulty of this particular class action and the extraordinary lengths to which both the Class Representatives and Class Counsel have had to go to represent the Class Members and pursue their rights. (*See also, e.g., See* Exhibit 3, Declaration of Marcy Hogan Greer ("Greer Decl.") ¶¶ 4-6). Both Class Representatives and Class Counsel have been zealously representing the Class in this litigation. (*Id.* ¶ 4). Class Counsel are sophisticated attorneys who are well experienced with complex litigation and in a position to evaluate the objective fairness of the proposal. (*Id.* ¶¶ 4-6, 13).

The Class Representatives and Class Counsel had ample information from which to make informed decisions about the strength of their claims. (Ex. 2, Kasten Decl. ¶¶ 12-13, 16). In addition to discovery taken to date in this action, the parties have had the benefit of the extensive materials that Defendants created and collected with respect to the Underlying Litigation against VALIC, which includes approximately 150,000 pages of documents from Defendants. (*Id.* ¶ 16).

The Class Representatives and Class Counsel all support this Settlement Agreement as a fair and appropriate way to resolve what will otherwise be continued, protracted, and resource-wasting litigation. (*Id.* ¶ 13; *see also* Exs. I & J to the Motion for Final Approval, incorporated by reference).

The absent class members also appear to support the settlement. They have been active in calling the toll-free call center and visiting the settlement website, www.bobbittsettlement.com. (Ex. 1, Rust Decl. ¶¶ 6-7). Class counsel have responded to hundreds of inquiries from Class Members. (Ex. 2, Kasten Decl. ¶ 9(i)). Yet no class member has objected to any of the terms of the Settlement, and a miniscule percentage of Class Members opted to exclude themselves from participation in the Settlement. (Ex. 1, Rust Decl. ¶¶ 15-16). Moreover, the Settlement Administrator sent a letter in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA") (as directed by the Court) that was mailed on April 12, 2023, to the offices of the attorney general in all fifty states and eight U.S. territories. (*Id.* ¶ 4; *see also* Dkt #408, Exs.1, 1-A & 1-B). And not one of these officials has contacted counsel, much less made an appearance or objected to the settlement. (Ex. 1, Rust Decl. ¶ 4).

**2.  This Settlement is the product of a zealously fought battle.**

The Court should be further assured that the vigorous advocacy of the adversary process it has supervised for the past several years has produced a Settlement that is fair, reasonable, adequate, and probably the best compensation that the Class Representatives and their Counsel can achieve for the Class Members. There is absolutely no hint of collusion.

**3.  The relief provided for the Class is adequate and fair.**

**a.  The risk, expense, complexity, and likely duration of further litigation weighs heavily in favor of approval.**

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of*

*Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). It should keep in mind that approval of settlement is generally "preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526.

Plaintiffs maintain that their malpractice claims against Defendants are strong, and that evidence proffered in the Underlying Litigation showed the Class' claims against VALIC were viable and valuable. The certified Class includes approximately 1.3 million members and spans five years. But Plaintiffs are also realistic that it has taken fourteen years to get to this point and that Defendants have asserted—and will continue to assert—significant arguments in denying any liability, causation, or damages in the class action.

A substantial consideration regarding the recovery is a factor beyond any of the Parties' control—the fact that most of the insurance available to cover the claims against Defendants here is subject to a dollar-for-dollar reduction by defense costs incurred in defending the Class Action, *i.e.* wasting. (Ex. 2, Kasten Decl. ¶¶ 10-12). The combined insurance policies for Defendants aggregate to approximately $52 million, and it is Class Counsel's understanding that approximately $50 million[9] of the available insurance is wasting. (*Id.* ¶ 10). Plaintiffs and their counsel understand the available insurance has already been significantly eroded by defense costs of millions of dollars, as a result of this litigation. (*Id.* ¶ 12).

Further, based on the Court's rulings, the Class must prove the "case within a case" to recover, *see Bobbitt*, 338 F.R.D. at 618, meaning that "[P]laintiffs must show they would have recovered in the underlying litigation" against VALIC. Proving a "case within a case" will require litigation of complex legal questions, including:

---

[9] Discovery in the case revealed the Milberg firm initially had two $25-million errors-and-omissions insurance policies, one primary and the other excess. (Ex. 2, Kasten Decl. ¶ 11). The Lustigman firm has a $2-million policy. (*Id.*). Defense costs do not erode the Lustigman policy limits. (*Id.*). The Uitz firm does not have insurance. (*Id.*).

- whether "VALIC's failure to disclose tax redundancy in its prospectuses and brochures constituted a violation of 10b–5 of the Securities Exchange Act of 1934;"[10]

- whether VALIC failed to make suitability determinations for its customers before recommending variable annuities to qualified plan investors;

- whether VALIC properly trained its agents to make required NASD disclosures purchasing variable annuities;

- the amount of damages sustained by the Class Members based on the excessive fees charged by VALIC.

(Ex. 2, Kasten Decl. ¶ 12; *see also* Ex. 3, Greer Decl. ¶ 7). These matters would require extensive litigation and would further reduce the amount realistically recoverable from Milberg's shrinking insurance policies. (Ex. 2, Kasten Decl. ¶ 12).

The decade-long appellate process—itself the product of years of investigation and legal battles on multiple fronts—is the best evidence of the complexity and uncertainty of litigating this complex of related cases to conclusion. Not only is this litigation complex and inevitably protracted, but the practical stakes are enormous, with approximately 1.4 million customers affected by the litigation. (*See* Ex. 1, Rust Decl. ¶ 9 [Class List contains data for 1.39 million class members]). Defendants have shown their commitment to vigorously defend against these claims, as demonstrated through the lengthy proceedings to date. Proceeding through additional pre-trial, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter.

By settling the litigation, the parties will conserve substantial time and expense, and the Class Members will receive significant relief much sooner than would be possible with further drawn-out litigation. And, of course, if this Settlement Agreement were not approved and litigation were to continue, the Class Members could receive virtually nothing. This is especially true given Class Counsel's understanding that all but $2 million of the Defendants' insurance policies, discussed below, are "wasting" policies

---

[10] *Bobbitt v. Milberg LLP*, 338 F.R.D. 607, 620 (D. Ariz. 2021).

and the available insurance is being reduced by defense fees and costs. (Ex. 2, Kasten Decl. ¶ 12).

As explained in part A.3.b, the Plan of Distribution will provide immediate recovery to the Settlement Class Members with a fund of $32.15 million available to be divided among them. The Settlement Fund constitutes a substantial percentage (nearly 76%) of Defendants' available, but wasting, resources. (*Id.* ¶¶ 10-12). If this matter is not settled, the available insurance will continue to erode given the Defendants' history of mounting a vigorous defense. (*Id.*) As to any settlement in the future, the available insurance will be significantly less. Further, any judgment collection efforts directed to the assets of the Defendant firms and individuals would be complex, difficult, and uncertain, and most likely, any recovery would be years in the future if at all.

Given the relief achieved and the risks and costs involved in further litigation, the Settlement Agreement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be finally approved. *See Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 624-25 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. . . ." Rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.").

### b. The Plan of Distribution is fair, reasonable, and adequate.

Rule 23(e)(2)(C)(ii) requires the Court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The method used in this Settlement is a time-tested and traditional method for distributing a settlement fund to a class—especially one of this magnitude. The claims process provides for cash payments to Settlement Class Members who timely file a Claim Form based on their pro rata share of the recovery. The allocation formula is objective and fair:

> The Settlement Administrator will calculate the average balance for all contributory retirement accounts the Settlement Class Member maintained with VALIC during the Class Period. That average will be based on milestone balances provided by VALIC that include month-end balances for the first and last month of the Class Period, as well as year-end balances for years 1998-2002. The average balance will be compared to the total average of VALIC account balances for every Settlement Class Member to create a ratio. That ratio will translate to percentage share of the Net Settlement Funds:
>
>> Example: Eligible Settlement Class Member A has an average balance of \$X over the course of the Class Period. All eligible Settlement Class Members have a total average balance of \$Y over the course of the Class Period. Settlement Class Member A will be entitled to receive a Distribution Check representing Z percentage (X/Y x 100) of the Net Settlement Funds.

(Dkt #398-1 § 7(c)(i)).

None of the Settlement Fund will revert back to the Defendants. Instead, if any balance remains in the Settlement Fund after the initial distribution, the Settlement Administrator "shall, if feasible, allocate such balance among authorized Claimants in an equitable and economic fashion. These redistributions shall be repeated until the remaining balance in the Settlement Fund is negligible, and any such remaining balance shall be donated to an appropriate 501(c)(3) nonprofit organization selected by Class Counsel and approved by the Court." (Dkt. #398-1 § 8(e)).

The Plan of Distribution supports final approval of the Settlement Agreement and an order authorizing its implementation. As noted above, not a single Class Member or government official has challenged the fairness of this Plan of Distribution in any way.

### c. The terms of any proposed award of attorney's fees, including timing of payment.

The proposed award of attorneys' fees is being addressed in the contemporaneously filed Application, which is incorporated by reference. The fee request is for 30% of the Class Recovery, which is reasonable, considering the lodestar calculation for Class Counsel's time roughly equates to the percentage-fee (accounting for the time value of money, as explained in the Application). The timing is fair to the

Settlement Class Members in that their distributions will be made regardless of whether the fee award is challenged or appealed. (Dkt. #398-1 § 5(c)).

### d. The terms of the agreements required to be identified under Rule 23(e)(3) are fair, reasonable, and adequate.

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it. As disclosed in the Preliminary Approval Motion, other than the Settlement Agreement, the only agreement implicated by this consideration is the Threshold Agreement identified in *Stipulated Motion to File Threshold Agreement Under Seal* (Dkt. #399), which was granted by the Court. That Threshold Agreement set forth a "threshold amount" related to termination if a sufficient number of Class Members excluded themselves from the Settlement. *See* (Dkt. #398-1§17(b)). The deadline for terminating the Settlement Agreement has passed, and the termination provision was not exercised, so this is a non-consideration.

In sum, the Settlement Agreement is the result of numerous, serious, and arm's-length discussions, and it continues to represent a number of hard-fought compromises that are designed to benefit the Class Members. The Agreement is sufficiently fair, reasonable, and adequate to justify final approval of the proposed Settlement.

### 4. The proposed Settlement is fair and equitable for all Class Members.

Finally, "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As explained, distributions from the Settlement Fund will be made on a purely objective and formulaic basis, tied to the Settlement Class Members' individual account balances. *See* part A.3.b. And any remaining funds will be similarly distributed on an equitable basis to the Settlement Class members until the Settlement Fund is essentially depleted. *Id*.

## B. The Court's approved notice campaign was successfully executed.

Rule 23(e)(1) requires that, before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be

bound by the proposal." Fed. R. Civ. P. 23(e)(1). In accordance with the Preliminary Approval Order (as supplemented), the Settlement Administrator timely:

(1) mailed the Summary Notice and Claim Form providing notice of the proposed Settlement to almost 1.4 million unique addresses for the class members according to the contact information provided by VALIC;

(2) posted the Class Notice on the Settlement website, www.bobbittsettlement.com; and

(3) published the approved notice in the national publication *Investor's Business Daily*.

(Ex. 1, Rust Decl. ¶¶ 3-14).

As the Court found in its Preliminary Approval Order, the notice plan: (i) complied with Rule 23 and the United States Constitution (including the Due Process Clause), the rules of this Court, and any other applicable law; (ii) constituted the best notice practicable under the circumstances to apprise Class Members of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing; and (iii) provided due and sufficient notice to all persons entitled to notice of the Settlement resolving this Action. (Dkt #405, ¶ 4.)

Further, the Defendants properly and timely notified the appropriate government officials of the Settlement in accordance with CAFA, 28 U.S.C. § 1715, on April 12, 2023. (Ex. 1, Rust Decl. ¶ 4; *see also* Dkt #408). More than ninety (90) days have elapsed since the Settlement Administrator mailed the CAFA notices and the Final Approval Hearing, and no government officials have objected to the Settlement. (Ex. 1, Rust Decl. ¶ 4).

This Court should thus confirm that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and CAFA; constituted the best notice practicable under the circumstances; and was due and sufficient notice to all Class Members.

## CONCLUSION AND PRAYER

For these reasons, Plaintiffs ask that the Court, at the conclusion of the Fairness Hearing on September 5 or thereafter, enter a final judgment:

(1) approving the Settlement Agreement as fair, reasonable, and adequate;

(2) finding that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and CAFA; constitutes the best notice practicable under the circumstances; and was due and sufficient notice to all Class Members;

(3) authorizing implementation of the Plan of Distribution to the Settlement Class Members as fair, reasonable, and adequate;

(4) dismissing this Action on the merits and with prejudice against all Defendants; and

(5) granting all other relief to which the Parties are entitled.

For the Court's review and convenience prior to the Final Approval hearing, a proposed final order and judgment, which is consistent with the settlement approval order and final judgment attached to the Parties' Settlement Agreement (*see* Dkt. # 398-1 Ex. D) is attached hereto as Exhibit 4.  A revised proposed final order and judgment, incorporating updated timing information and any additional information from the Settlement Administrator, will be submitted to the Court in advance of the Final Approval hearing on September 5, 2023.

RESPECTFULLY SUBMITTED this 4th day of August, 2023.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: *s/Lawrence A. Kasten*
Lawrence A. Kasten
Nicholas S. Bauman
Allison L. Whitehill
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
*Attorneys for Plaintiffs Philip Bobbitt and Lance Laber*

# CERTIFICATE OF SERVICE

I certify that on August 4, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

        Douglas J. Pepe – dpepe@cohengresser.com

        Alexandra K. Theobald – atheobald@cohengresser.com

        Benjamin Zhu – bzhu@cohengresser.com

        Gila S. Singer – gsinger@jha.com

        Gregory P. Joseph – gjoseph@jha.com

        Honey L. Kober – hkober@jha.com

        Michele G. Thompson – mthompson@udalllaw.com

        Kathleen M. Rogers – krogers@sluteslaw.com

        Donald L. Myles, Jr. – dmyles@jshfirm.com

        J. Gary Linder – glinder@jshfirm.com

        Steven D. Leach – sleach@jshfirm.com

        Robert H. McKirgan – rmckirgan@pswfirm.com

        Guy M. Hohmann – guyh@hohmannlaw.com

        Joseph F. Brophy – joe@bdlawpllc.com

        Ryan T. Shelton – ryan@eswpllc.com

        D. Douglas Brothers – dbrothers@gbkh.com

By: *s/Ashly White*